1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ESTHER WELLS, | Case No. 5:14-cv-05503-PSG |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| CAROLYN COLVIN, Acting Commissioner, Social Security Administration, | **(Re:  Docket Nos. 19, 21)** |
| Defendant. | |

Plaintiff Esther Wells seeks Social Security disability benefits for fibromyalgia, depression and other conditions.  Pursuant to 42 U.S.C. § 405(g), Wells requests judicial review of the Commissioner of Social Security's final decision denying her benefits claim.  Wells moves for summary judgment and payment of benefits,[1] while the Commissioner moves for summary judgment and affirmation of the Commissioner's final decision.[2]  The Commissioner's motion for summary judgment is GRANTED.  Wells' motion for summary judgment is DENIED.

---

[1] *See* Docket No. 19.

[2] *See* Docket No. 21.

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

**I.**

Wells first applied for Social Security disability benefits in 2010, alleging an initial onset date of December 1, 2009.[3]  That claim was denied both initially and upon reconsideration,[4] so Wells requested and received a hearing before an Administrative Law Judge.[5]  The ALJ denied Wells' claim, and Wells appealed.[6]  The Appeals Council vacated and remanded for a new hearing,[7] and in 2013, the ALJ conducted a second hearing.[8]  After this hearing, Wells amended her initial onset date.[9]  The ALJ then issued a ruling concluding that Wells was not disabled, according to the five-step evaluation process for determining disability.[10]

The five-step evaluation process first asks whether a claimant is currently engaged in substantial gainful activity.[11]  If yes, the claimant is not disabled.  If no, the ALJ proceeds to step two and evaluates whether the claimant has a medically determinable impairment or combination of impairments that is severe.[12]  If no, the claimant is not disabled.  If yes, the ALJ proceeds to step three and considers whether the MDI or combination of impairments meets or equals any of the listed impairments under 20 C.F.R. pt. 404, subpt. P, app. 1.[13]  If yes, the claimant is disabled.  If no, the ALJ proceeds to step four, determines the claimant's residual functional capacity and

---

[3] *See* Docket No. 14-7 at 312.

[4] *See id.*; Docket No. 14-6 at 238-42, 246-50.

[5] *See* Docket No. 14-6 at 259-60; Docket No. 14-4 at 144-204.

[6] *See* Docket No. 14-5 at 209-33.

[7] *See id.* at 235-36.

[8] *See* Docket No. 14-3 at 86-143.

[9] *See* Docket No. 14-6 at 309.

[10] *See* Docket No. 14-3 at 42.

[11] *See* 20 C.F.R. § 416.920(a)(4)(i).

[12] *See* 20 C.F.R. § 416.920(a)(4)(ii).

[13] *See* 20 C.F.R. § 416.920(a)(4)(iii).

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  assesses whether the claimant is capable of performing her past relevant work.[14]  If yes, the

2  claimant is not disabled.  If no, the ALJ goes to step five and considers the claimant's RFC, age,

3  education and work experience to see if the claimant can make an adjustment to other work.[15]  If

4  yes, the claimant is not disabled; if no, the claimant is disabled.

5      The ALJ found at step one that Wells was not engaged in substantial gainful activity.[16]  At

6  step two, the ALJ found that Wells had the severe MDI of "generalized body pain diagnosed as

7  fibromyalgia; lightheadedness," but that Wells' depression was not severe.[17]  At step three, the ALJ

8  found that Wells did not have an impairment or combination of impairments meeting or medically

9  equaling a listed impairment.[18]  At step four, the ALJ found that Wells had the RFC to perform

10  "light work as defined in 20 CFR 416.967(b) except that [Wells] is limited to lifting the more than

11  25 pounds occasionally and less than 10 pounds frequently; is limited to standing and/or walking

12  no more than 30 minutes at one time and no more than 6 hours total in an eight-hour day; has

13  additional nonexertional limitation against performing any climbing of ladders, ropes, or scaffolds;

14  against climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling more than

15  occasionally; against any exposure to work hazards such as unprotected heights or moving

16  machinery; and against concentrated exposure to vibration."[19]  The ALJ then found Wells capable

17  of performing past relevant work, and thus found that Wells was not disabled.[20]

---

[14] *See* 20 C.F.R. § 416.920(a)(4)(iv).

[15] *See* 20 C.F.R. § 416.920(a)(4)(v).

[16] *See* Docket No. 14-3 at 27.

[17] *Id.* at 27-30.

[18] *See id.* at 30-31.

[19] *Id.* at 31-40.

[20] *Id.* at 41.

3

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    Wells requested that the Appeals Council review the ALJ's unfavorable decision and the

2  Appeals Council declined.[21]  Wells now appeals the ALJ's decision to this court, and both parties

3  move for summary judgment.[22]

4                                                    **II.**

5    The court has jurisdiction under 42 U.S.C. § 405(g).  The parties consented to the

6  jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c).[23]  The court finds this

7  motion suitable for disposition on the papers in light of the court's local rules and procedural

8  order.[24]

9    A district court has the "power to enter, upon the pleadings and transcript of the record, a

10  judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

11  with or without remanding the case for a rehearing."[25]  The decision of the Commissioner should

12  only be disturbed if it is not supported by substantial evidence or if it is based on legal error.[26]

13  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the

14  conclusion.[27]  Where evidence is susceptible to more than one rational interpretation, the ALJ's

15  decision should be upheld.[28]

16                                                   **III.**

17    Applying the above standards, the motions are resolved as follows.

18  _____

19  [21] *See* Docket No. 15-3 at 1-6.

20  [22] *See* Docket Nos. 1, 19, 21.

21  [23] *See* Docket Nos. 6, 7.

22  [24] *See* Docket No. 5; Civ. L.R. 7-1(b); Civ. L.R. 16-5.

23  [25] 42 U.S.C. § 405(g).

24  [26] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

25  [27] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere
26  scintilla but less than a preponderance.").

27  [28] *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

28

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

*First*, the court finds that substantial evidence supports the ALJ's determination at step two that Wells' depression was not severe.  In assessing the severity of an affective disorder, such as depression, an ALJ must consider the criteria outlined in 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04.  Under this section, a depressive disorder is considered severe when (1) there is a medically documented persistence, either continuous or intermittent, of one or more specified symptoms that (2) results in at least two of the following: (i) marked restriction of activities of daily living; (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in maintaining concentration, persistence or pace or (iv) repeated episodes of decompensation, each of extended duration.[29]  These four functional areas are known as the "Paragraph B" criteria.

Wells argues that the ALJ's finding that her depression is not severe lacks substantial evidence.  Wells specifically objects to the ALJ's findings she had only a mild limitation in activities of daily living; a mild limitation in social functioning; a mild limitation in concentration, persistence or pace; and no extended episodes of decompensation.  Wells also objects to the ALJ's decision to give treating psychiatrist Dr. Gregory Braverman's opinion "little weight."[30]  The court finds that substantial evidence supports the ALJ's Paragraph B findings and that whether the ALJ erred in giving Braverman's RFC opinion "little weight" is not relevant to the step two issue of whether Wells' depression was a severe impairment.[31]

Wells first objects to the ALJ's finding of a mild limitation in the first functional area, activities of daily living.  She challenges the ALJ's reliance on evidence predating the amended onset date and also argues that the ALJ mischaracterized Wells' testimony.  The ALJ relied on Wells' 2011 hearing testimony, Wells' 2010 report to examining physician Dr. Tam Nguyen,

---

[29] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.04(A)-(B).  The severity requirement may also be satisfied if the "Paragraph C" criteria laid out in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.04(C) are fulfilled, but Wells does not challenge the ALJ's finding that the Paragraph C criteria are not met. *See* Docket No. 14-3 at 30.

[30] *See* Docket No. 19-1 at 12-17.

[31] The court finds, however, that the ALJ did not err in assigning Braverman's RFC opinion "little weight."  *See infra* at 22-25.

5

United States District Court
For the Northern District of California

1    Wells' 2010 report to examining psychiatrist Dr. Antoinette Acenas and Wells' 2013 hearing

2    testimony in making the mild limitation finding.[32]

3        Regardless of whether it was improper for the ALJ to rely on testimony and evidence that

4    predated the amended onset date of July 19, 2012, Wells' 2013 hearing testimony was sufficient to

5    provide substantial evidence supporting the ALJ's finding of a mild limitation in daily activities.

6    The ALJ noted that at the 2013 hearing, Wells testified that she was "able to perform significant

7    daily activities including going outside for a walk each day with her walk typically lasting 10

8    minutes, feeding her dog, folding clothes, preparing lunch, picking up after her mother and

9    performing other like household chores, cooking dinner, watching television, and reading."[33]

10       Moreover, the ALJ's summary did not misstate Wells' 2013 testimony.  Wells' arguments

11   distort the ALJ's opinion and read into it claims that are not there.  For example, Wells argues that

12   the ALJ mischaracterized her testimony because she does not—and cannot—walk with her dog due

13   to her impairment.[34]  However, nothing in the ALJ's summary suggests otherwise.  The ALJ noted

14   that Wells was able to go on walks and was able to feed her dog; the ALJ did not state or imply that

15   Wells went on walks with her dog.[35]  Wells also objects to the ALJ's statement that Wells folds

16   clothes, prepares lunch, picks up after her mother, cooks dinner, watches television and reads.[36]

17   The ALJ's summary of Wells' testimony is accurate, however, as Wells testified that she folds

18   clothes,[37] prepares lunch,[38] picks up after her mother,[39] watches TV[40] and reads.[41]  The ALJ did

19

20   [32] *See* Docket No. 14-3 at 28-29.

21   [33] *Id.* at 29.

22   [34] *See* Docket No. 19-1 at 13.

23   [35] *See* Docket No. 14-3 at 29.

24   [36] *See* Docket No. 19-1 at 13.

25   [37] *See* Docket No. 14-3 at 122.

26   [38] *See id.* at 123.

27   [39] *See id.*

28

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

not, contrary to Wells' argument, suggest that Wells does more than fold the clothes, or that she makes a "10 course meal" when preparing lunch.[42]  The sole discrepancy between Wells' testimony and the ALJ's summary is that the ALJ stated that Wells was able to cook dinner,[43] while Wells testified that she cooked dinner only two nights a week and her sisters cooked the remaining nights.[44]  The ALJ did not state how frequently Wells cooked, however, and so her summary is not, strictly speaking, inaccurate.  In short, the ALJ's opinion accurately summarizes the daily activities that Wells voluntarily acknowledged in her testimony and does not state or imply that Wells is capable of doing more than those activities.  There is no support for Wells' contention that the ALJ, by merely listing those activities that Wells described, mischaracterized her testimony.

Wells next objects to the ALJ's finding of mild limitation in the second functional area, social functioning.  She challenges the ALJ's reliance on evidence from before the amended onset date and the ALJ's reliance on her experiences interacting with Wells at the hearings.[45]

Regardless of whether it was improper for the ALJ to rely on testimony and evidence that predated the amended onset date of July 19, 2012, the ALJ's finding also was supported by substantial evidence that postdated the amended onset date.  First, the ALJ cited Braverman's 2013 report, which did not note any trouble interacting with Wells.[46]  Second, the ALJ relied on Wells' living situation, stating that Wells "lives with, takes care of, and gets along satisfactorily with her

---

[40] *See id.* at 124.

[41] *See id.* at 124-25.

[42] Docket No. 19-1 at 13.

[43] *See* Docket No. 14-3 at 29.

[44] *See id.* at 124.

[45] *See* Docket No. 19-1 at 14.

[46] *See* Docket No. 14-3 at 124; Docket No. 14-12 at 795-98.

7

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

parents."[47]  Third, the ALJ noted that she "had no trouble communicating with [Wells] during two lengthy ALJ hearings," one of which was after the amended onset date.[48]  The ALJ commented that "[i]n fact, [Wells] was quite communicative and articulate at the hearings."[49]  Taken together, these three pieces of evidence are substantial.

As for Wells' objection to the ALJ's reliance on her experiences interacting with Wells at the hearings, the preceding paragraph shows that the ALJ did not rely solely on this, and the other evidence discussed there is sufficient to form substantial evidence supporting the ALJ's finding of a mild limitation in social functioning.

Wells' third objection is to the ALJ's finding of mild limitation in the third functional area, concentration, persistence or pace.  She argues that Acenas' 2010 psychiatric report is irrelevant because it predated the amended onset date, and she further argues that the ALJ mischaracterized Acenas' report.[50]  Wells also argues that the ALJ mischaracterized Braverman's treatment notes and gave them inappropriate weight.

Regardless of whether it was improper for the ALJ to rely on evidence that predated the amended onset date of July 19, 2012 (such as Acenas' report), the ALJ's finding was supported by substantial evidence that postdated the amended onset date.  In terms of post-July 2012 evidence, the ALJ cited Braverman's notes from October 15, 2012, July 23, 2013 and September 18, 2013.[51]  The ALJ stated that the "most recent treatment notes from psychiatrist Dr. Braverman also reveal only minimally abnormal mental status examinations and do not mention any attention, concentration, or memory deficits.  Some examinations, such as the one performed on October 15,

---

[47] *See* Docket No. 14-3 at 29.

[48] *Id.*

[49] *Id.*

[50] *See* Docket No. 19-1 at 14.

[51] *See* Docket No. 14-3 at 29.

8

United States District Court
For the Northern District of California

1  2012, were even essentially normal."[52]  The ALJ also stated that she was able to personally observe

2  Wells at two one-and-a-half hour hearings, one of which was after the amended onset date, and

3  found that Wells "exhibited no more than mildly impaired concentration and persistence."[53]

4       As for the ALJ's characterization of Braverman's treatment notes, the court finds no error

5  here.  Wells argues that her mental status exams were not normal because she began seeing

6  Braverman after she tried to hurt herself, and that Braverman noted she had a restricted affect and a

7  sad mood and prescribed increased dosages of Zoloft and Cymbalta.[54]  But these arguments are not

8  relevant to the ALJ's finding on concentration, persistence or pace.  Concentration, persistence or

9  pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit

10  the timely and appropriate completion of tasks commonly found in work settings."[55]  Braverman's

11  treatment notes "do not mention any attention, concentration, or memory deficits,"[56] and Wells

12  does not argue that her affect, mood or increased medication dosages are evidence of a marked

13  limitation in her "ability to sustain focused attention and concentration."  She also does not show

14  how her affect, mood and increased medication dosages affect that ability.  Wells mentions that her

15  Global Assessment of Functioning score was 40 when she began seeing Braverman,[57] but the

16  Social Security Administration has chosen not to adopt GAF scores or endorse their use in Social

17  Security disability programs.[58]

18       Wells' fourth objection is to the ALJ's finding that the fourth functional area, episodes of

19  decompensation of extended duration, was not satisfied.  Wells argues that the ALJ minimized her

---

[52] *Id.*

[53] *Id.*

[54] *See* Docket No. 19-1 at 15.

[55] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[56] Docket No. 14-3 at 29.

[57] *See* Docket No. 19-1 at 15; Docket No. 14-11 at 726.

[58] *See* 65 Fed. Reg. 50746, 50746-65 (Aug. 21, 2000).

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  admission to the emergency room and that a "[d]urational measurement of episodes of

2  decompensation in hours is not required to establish severity."

3       Substantial evidence supports the ALJ's finding that Wells has not experienced "any

4  episodes of deterioration or decompensation of extended duration since the alleged onset date."[59]

5  Wells' admission to the emergency room was on May 19, 2012, which predates her amended onset

6  date,[60] and Wells does not argue that she experienced any other episodes of decompensation.  Even

7  if the May 19 episode were considered, however, the fourth functional area would not be satisfied,

8  because it requires repeated episodes of decompensation, each of extended duration.  Under the

9  applicable administrative regulation, the term "repeated episodes of decompensation, each of

10  extended duration" means "three episodes within 1 year, or an average of once every 4 months,

11  each lasting for at least 2 weeks."[61]  If a claimant experiences more frequent episodes of shorter

12  duration or less frequent episodes of longer duration, the ALJ must exercise her judgment to

13  determine whether the severity of the episodes are durationally and functionally equivalent.[62]

14  While Wells is correct that an episode of decompensation need not last for months,[63] there is no

15  support for Wells' argument that a single episode lasting less than two weeks[64] satisfies or

16  medically equals the requirement for repeated episodes of extended duration.

17       In sum, substantial evidence supports the ALJ's findings of mild limitations in activities of

18  daily living, social functioning, and concentration, persistence or pace, and of no repeated episodes

19

20

21  ---

[59] Docket No. 14-3 at 30.

22  [60] *See* Docket No. 14-12 at 778-89.

23  [61] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.00(C)(4).

24  [62] *See id*.

25  [63] *See* Docket No. 19-1 at 15-16.

26  [64] Wells "was admitted in the early evening and discharged at 7:30 a.m., the next morning."
27  Docket No. 19-1 at 16.

28

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    of decompensation, each of extended duration.  The ALJ correctly found that the Paragraph B

2    criteria were not satisfied and Wells' depression was not severe.

3            Wells' final objection to the ALJ's finding that her depression was not severe is that the

4    ALJ gave Braverman's opinion "little weight."[65]  To be clear, Wells submitted both treatment notes

5    and a residual functional capacity opinion from Braverman,[66] and the ALJ assigned "little weight"

6    to Braverman's RFC opinion, not his treatment notes.[67]  The treatment notes and the RFC opinion

7    came into play at different stages of the five-step sequential evaluation.  The ALJ considered the

8    treatment notes in analyzing whether Wells' depression was a severe impairment at step two of the

9    five-step sequential evaluation, and the RFC opinion was to be considered at step four, for

10   determining Wells' RFC.  In conducting the step two severity analysis, the ALJ examined whether

11   Wells satisfied the Paragraph B criteria for determining that depression is a severe impairment, as

12   described above.  In doing so, the ALJ properly relied on and cited Braverman's treatment notes

13   and not his RFC opinion.[68]

14           Whether the ALJ erred in giving Braverman's RFC opinion "little weight" is not relevant to

15   the step two issue of whether Wells' depression was a severe impairment.  It is true that the ALJ

16   concluded her step two analysis with a finding that "the objective medical evidence, the well

17   supported medical opinion evidence, and the evidence present in the record as a whole—including

18   [Well's] own statements concerning her daily activities—strongly contradict[ed]" Braverman's

19   RFC opinion.[69]  There is no indication, however, that the ALJ considered Braverman's RFC

20   opinion in the step two analysis, rather than the step four analysis.  Absent that, the assignment of

21   "little weight" to Braverman's RFC opinion does not affect the validity of the ALJ's finding at step

22   two that Wells' depression did not satisfy the Paragraph B criteria and therefore was not severe.

23   [65] *See id.* at 16-17.

24   [66] *See* Docket No. 14-11 at 708-29; Docket No. 14-12 at 790-93, 794-98.

25   [67] *See* Docket No. 14-3 at 30, 40.

26   [68] *See id.* at 29-30 (citing and summarizing Braverman's 2012-2013 treatment notes in detail).

27   [69] Docket No. 14-3 at 30.

28
     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Wells' last argument regarding Braverman's RFC is that because the ALJ found that her

2    depression was not severe at step two, the ALJ failed to list any mental limitations in her RFC and

3    did not list any mental limitations in the hypothetical she gave to the vocational expert.[70]   The court

4    has found, however, that the ALJ's step two finding of non-severity was supported by substantial

5    evidence.  This means that Wells was not disabled with respect to her depression, and so the ALJ

6    was not obligated to apply the step three, four and five disability analysis to Wells' claim of

7    depression.[71]

8    *Second*, the court finds that the ALJ did not err in determining at step three that Wells'

9    impairments did not meet or equal any listed impairment.  Wells objects to the ALJ's step three

10   finding that Wells "does not have an impairment or combination of impairments that meets or

11   medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

12   Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."[72]   Wells argues that because the ALJ did

13   not mention Social Security Ruling 12-2p in her decision, she did not consider the symptoms and

14   signs of fibromyalgia pursuant to Social Security guidance.[73]   Wells believes that the ALJ must

15   consider "the factors required by SSR 12-2p" when making the step three determination.

16   While Wells is correct that the ALJ did not mention SSR 12-2p in her opinion, this has no

17   bearing on the validity of the ALJ's step three determination.  SSR 12-2p establishes two sets of

18   guidelines for analyzing whether a claimant has fibromyalgia.[74]   These guidelines are relevant to

19   the ALJ's determination at step two of whether a claimant has a medically determinable

20   impairment ("MDI") of fibromyalgia.[75]   At step three of the five-step sequential evaluation, the

---

[70] *See* Docket No. 19-1 at 17.

[71] *See* 20 C.F.R. § 416.920(a)(4)(ii).

[72] *See* Docket No. 19-1 at 19-20; Docket No. 14-3 at 30.

[73] *See* Docket No. 19-1 at 20.

[74] *See* SSR 12-2p, 2012 WL 3104869, at *2-*3, 5.

[75] *See id.*

12

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    ALJ decides whether a claimant's impairment(s) meets or equals any of the impairments listed in

2    20 C.F.R. pt. 404, subpt. P, app. 1.[76]  SSR 12-2p notes that fibromyalgia "is not a listed

3    impairment."[77]  "At step 3, therefore, [the ALJ] determine[s] whether FM medically equals a

4    listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it

5    medically equals a listing in combination with at least one other medically determinable

6    impairment."[78]  There is nothing in SSR 12-2p that requires ALJs to apply the step two diagnostic

7    guidelines to determine whether a claimant's fibromyalgia medically equals a listing at step three.

8           In this case, the ALJ did not refer to either of the two diagnostic guidelines when she found

9    at step two that Wells had an MDI of fibromyalgia.[79]  The ALJ nonetheless found that Wells had

10   an MDI of fibromyalgia,[80] and so the ALJ's failure to refer to SSR 12-2p is harmless error.[81]  At

11   step three, the ALJ found that Wells' impairments did not meet or medically equal a listed

12   impairment.[82]  She noted that the absence of any listing directly addressing fibromyalgia, and

13   "reviewed [Wells'] symptoms under the most relevant and analogous musculoskeletal and

14   neurological listings" before finding that Wells "did not meet or equal a listing."[83]  There is no

15   error in the ALJ's failure to refer to the SSR 12-2p diagnostic guidelines in her step three analysis;

16   step three only required her to determine whether Wells' impairments equaled a listed impairment,

17   and she found that they did not.

18   _____

19   [76] *See* 20 C.F.R. § 416.920(a)(4)(iii).

20   [77] SSR 12-2p, 2012 WL 3104869, at *6.

21   [78] *Id.*

22   [79] *See* Docket No. 14-3 at 27.

23   [80] *See id.*

24   [81] *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's
25   decision on account of an error that is harmless").

26   [82] *See* Docket No. 14-3 at 30.

27   [83] *Id.* at 31.

28                                                  13

     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

1

2

*Third*, the ALJ did not err in finding Wells' statements about the intensity, persistence and limiting effects of her symptoms "not entirely credible."[84]

3

4

5

6

7

8

9

10

11

12

When evaluating a claimant's testimony regarding the severity of her symptoms, the ALJ first must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms."[85]  At this point, the claimant "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"[86]  If the claimant satisfies the first factor and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting the claimant's testimony about the severity of her symptoms.[87]  If the ALJ finds a claimant's testimony unreliable, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[88]

13

14

15

16

In this case, the ALJ found that Wells' MDIs could reasonably be expected to cause her alleged symptoms, but that Wells' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for several reasons, which the ALJ went on to explain.[89]

17

18

19

Wells argues that the ALJ's adverse credibility finding was not supported by substantial evidence.[90]  She specifically objects to the ALJ's statements about (1) her complaints to her

---

20

[84] *Id.* at 35.

21

22

[85] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted).

23

[86] *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)).

24

[87] *Lingenfelter*, 504 F.3d at 1036.

25

[88] *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted).

26

[89] Docket No. 14-3 at 35.

27

[90] *See* Docket No. 19-1 at 21.

28

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

1    treating physicians; (2) her physicians' descriptions of her condition; (3) her daily activities; (4) the

2    lack of sufficient abnormal clinical signs and laboratory findings; (5) her routine and conservative

3    treatment regime; and (6) the opinions of the Social Security Administration's consulting and

4    examining physicians.[91]

5            Wells' first objection to the adverse credibility finding is to the ALJ's consideration of

6            [Wells'] failure to consistently complain to her treating, examining, and attending
             physicians of the same level of disabling symptoms that she generally alleges and
7            testified to during this hearing.  As outlined above, although the claimant alleges
             disabling pain and fatigue secondary to fibromyalgia, the claimant has often
8            complaint to her treating physicians of only mild to moderate symptoms.[92]

9    Wells argues that the judge did not cite any example in the record of mild symptoms, that she has

10   suffered pain since 2009, that her physicians describe her pain as moderate and chronic, and that

11   fibromyalgic pain waxes and wanes.[93]

12           These arguments are not persuasive.  The standard for an adverse credibility finding

13   requires the ALJ to state "specific, clear, and convincing reasons"[94] for making an adverse finding,

14   and "specifically identify what testimony is credible and what testimony undermines the claimant's

15   complaints."[95]  The ALJ's reasons, quoted above, are specific, clear and convincing: the ALJ

16   identified inconsistencies in the content and severity of Wells' complaints to her doctors versus at

17   the hearing.  The ALJ also identified specific testimony undermining Wells complaints: the ALJ

18   reviewed Wells' medical records from 2006 onward and noted, for example, that in 2010, Wells

19   "denied muscle aches[ and] pain" to examining physician Nguyen, and that in 2010, treating

20   physician Dr. Thomas Bush noted that Wells' "symptoms were moderate and unchanged."[96]  The

21

22   [91] *See id.*

23   [92] Docket No. 14-3 at 35.

24   [93] *See id.* at 21-22.

25   [94] *Lingenfelter*, 504 F.3d at 1036

26   [95] *Morgan*, 169 F.3d at 599 (citations omitted).

27   [96] Docket No. 14-3 at 32-35.

28                                                          15
     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

1   ALJ also identified inconsistencies in Wells' reports to her doctors: in August 2009, Wells told

2   treating physician Dr. Lisa Bowie that she had morning stiffness, but in October 2009, Wells

3   reported to Bush that she had no history of morning stiffness.[97]

4   It is true, as Wells argues, that fibromyalgic pain waxes and wanes, and that experiencing

5   moderate pain is not the same thing as being pain-free.  However, the ALJ did not find that Wells

6   was pain-free; she found that Wells' testimony about the intensity, persistence and limiting effects

7   of her pain was "not entirely credible" because of the reasons described above.[98]  This is not the

8   same as stating that Wells is pain-free, and Wells' argument is disingenuous in suggesting

9   otherwise.

10   Wells' second objection to the adverse credibility finding is that there "is no cure for

11   fibromyalgia; doctors can only treat the symptoms."[99]  She contests the ALJ's statement that

12   "[Wells'] physicians have also described her condition as stable and under fair control."[100]  Wells

13   argues that the ALJ did not cite to any document in the record, that whether her fibromyalgia is

14   under control is irrelevant to whether it prevents her from working, and that the stability of her

15   condition does not make her incredible.

16   Contrary to Wells' assertion, the ALJ identified several medical records describing Wells'

17   condition as stable and under control, such as notes from treating physician Dr. Annu Navani,[101]

18   treating physician Bush[102] and examining physician Nguyen.[103]  Furthermore, whether Wells'

19   _____

20   [97] See id. at 33.

21   [98] See id. at 35.

22   [99] Docket No. 19-1 at 22.

23   [100] Docket No. 14-3 at 35; see Docket No. 19-1 at 22.

24   [101] See Docket No. 14-3 at 33 ("Dr. Navani noted that [Wells'] condition appeared to be, for the
25   most part, stable.").

26   [102] See id. at 34 ("On March 03, 2010 . . . Dr. Bush concluded that [Wells'] fibromyalgia was under
     fair control. . . . On July 29, 2010 . . . Dr. Bush noted that [Wells'] symptoms were moderate and
27   unchanged").

28
     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

United States District Court
For the Northern District of California

fibromyalgia is under control or stable is directly relevant to her credibility in testifying whether her fibromyalgia symptoms prevent her from working.  Wells testified to disabling levels of symptoms, but her doctors' treatment records state that the fibromyalgia is under control and stable, thereby contradicting her testimony.  The treatment records are substantial evidence supporting the ALJ's conclusion that Wells was not fully credible in her statements about the limiting effects of her fibromyalgia symptoms.

Wells' third objection to the adverse credibility finding is that she believes the ALJ mischaracterized her daily activities and relied on her daily activities predating the amended onset date.  In the Ninth Circuit, ALJs may use testimony about a claimant's daily activities to make an adverse credibility finding about the claimant's allegations of pain.[104]  There are two grounds for using daily activities to form the basis of an adverse credibility determination: if the claimant's activities contradict her other testimony, or if her activities meet the threshold for transferable work skills.[105]

Wells' testimony about her daily activities has been discussed above, where the court found that the ALJ did not mischaracterize or exaggerate Wells' testimony about her daily activities.[106] The court also held that Wells' testimony about her daily activities at the 2013 hearing, after the amended onset date, was sufficient to provide substantial evidence supporting the ALJ's finding of a mild limitation in daily activities at step two of the five-step sequential analysis.[107]  The ALJ therefore did not err in finding that Wells' testimony about her daily activities contradicted her other testimony about the intensity, persistence and limiting effects of her symptoms.

---

[103] *See id.* ("Dr. Nguyen diagnosed fibromyalgia with stable symptoms controlled with medication and stable depression.")

[104] *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[105] *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

[106] *See supra* at 6-7.

[107] *See id.* at 6-7.

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Wells' fourth objection to the adverse credibility finding is to the ALJ's reliance on

2    the absence of abnormal clinical signs and laboratory findings in the case record at a
     level sufficient to support the full credibility of [Wells'] subjective complaints; the

3    presence of several essentially normal clinical findings in the case record – such as
     normal muscle strength, a normal gait, normal reflexes, normal sensation, a

4    sometimes euthymic mood and full ranged affect, normal thought process, and
     normal insight and judgment – strongly contradicting the full credibility [of]

5    [Wells'] subjective complaints.[108]

6    Wells argues that there are no laboratory tests for fibromyalgia and that strength and atrophy are

7    not components of fibromyalgia, and so an absence of test results or atrophy is not a clear and

8    convincing reason for an adverse credibility finding.[109]

9          Wells is correct that there are no tests for fibromyalgia and that fibromyalgia is not

10   necessarily characterized by muscle atrophy or lack of strength.[110]   However, the ALJ's opinion

11   was not that Wells does not have fibromyalgia at all, but that Wells' fibromyalgia symptoms were

12   not as severe as alleged.  The ALJ did not err in finding that the objective medical evidence she

13   identified reduced Wells' credibility; if the fibromyalgia symptoms were as debilitating as Wells

14   testified to, then there would likely be abnormal clinical indications.  For example, Wells alleged

15   disability due to "diffuse muscle spasming" and "generalized weakness" and that because of these

16   and other symptoms, she "is often unable to sustain even minimal physical activity."[111]   However,

17   the clinical findings show "normal muscle strength, a normal gait, normal reflexes."[112]   The ALJ's

18   reliance on the clinical findings satisfies the specific, clear and convincing reason standard: she

19   specifically identified the medical evidence undermining Wells' testimony, and there was

20   substantial support for her finding of incredibility.

---

21   [108] Docket No. 14-3 at 35.

22   [109] *See* Docket No. 19-1 at 23.

24   [110] Mayo Clinic Staff, *Diseases and Conditions Fibromyalgia*, Mayo Clinic,
     http://www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/definition/con-20019243?p=1

25   (last visited Mar. 1, 2016); SSR 12-2p, 2012 WL 3104869, at *3, *3 n.9.

26   [111] Docket No. 14-3 at 32.

27   [112] *Id.* at 35.

28                                                      18

1    Wells' fifth objection to the adverse credibility finding is to the ALJ's reliance on "[Wells']

2    receipt of only routine and conservative treatment despite complaints of disabling symptoms;

3    [Wells'] current medication regimen."[113]   Wells argues that there is no cure for fibromyalgia, the

4    only treatment is for treating the pain symptoms, that her doctors are adjusting her medication

5    regime and that she takes several medications.[114]   "If nothing was wrong with her, she would not

6    need to be taking all of this medication."[115]

7        This objection also is groundless.   The ALJ did not, as Wells claims, find that nothing was

8    wrong with Wells.   The ALJ found that Wells had fibromyalgia, but that the limiting effects were

9    not as severe as Wells alleged, in part because Wells received only routine and conservative

10   treatment.   It is permissible for an ALJ to infer that a claimant's pain is not as severe as reported if

11   the claimant "[does] not seek an aggressive treatment program,"[116] and the ALJ identified several

12   instances where Wells' treatment regime did not align with the alleged severity of her complaints.

13   For example, in January 2009, Wells received treatment from Bowie, who recommended that

14   Wells follow up with her in one month.[117]   "[B]ut [Wells] did not follow-up with Dr. Bowie again

15   until August 2009," and so the ALJ "[found] it reasonable to conclude that [Wells'] symptoms

16   improved since she did not follow-up with Dr. Bowie."[118]   Treating physician Bush "typically

17   recommended conservative treatment with follow-up examinations once every 3 months, a course

18   of treatment somewhat difficult to reconcile with [Wells'] original allegations of disabling pain and

19

20   _____

     [113] *Id.* at 35; *see* Docket No. 19-1 at 23.

21

22   [114] *See* Docket No. 19-1 at 23.

23   [115] *Id.*

24   [116] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d
     742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a
25   claimant's testimony regarding severity of an impairment").

26   [117] *See* Docket No. 14-3 at 32.

27   [118] *Id.*

28                                              19
     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  fatigue present since 2009."[119]  In 2010, Wells began physical therapy, but "missed several

2  sessions in a short period, not showing up for some and cancelling others.  [The ALJ found] it

3  somewhat difficult to reconcile [Wells'] complaints of disabling pain with her receipt of only

4  conservative treatment and her failure to follow through with even this prescribed conservative

5  treatment."[120]  Updated treatment notes from Bowie and Braverman show that Wells "continued

6  receipt of sparse and conservative treatment."[121]  In short, the ALJ's reliance on Wells' treatment

7  and medication regime satisfies the specific, clear and convincing reason standard: she specifically

8  identified the medical evidence undermining Wells' testimony, and there was substantial support

9  for her finding of incredibility.

10  Wells' final objection to the ALJ's adverse credibility finding is to the ALJ's reliance on

11  "the contravening and well supported medical opinions of the state agency medical consultants, of

12  examining physicians Dr. Nguyen and Dr. Acenas, and of impartial medical experts Dr. Vu and Dr.

13  Nelp."[122]  Wells' argument has two parts: first, she challenges the ALJ's reliance on the non-

14  treating physicians' opinions, and second, she challenges the weight the ALJ gave to the treating

15  physicians' RFC opinions.[123]

16  In contesting the ALJ's reliance on non-treating physicians' opinions, Wells argues that (1)

17  all medical opinions predating the amended onset date are irrelevant; (2) the ALJ and the SSA

18  doctors did not use SSR 12-2p; and (3) under SSR 12-2p's diagnostic guidelines, it is clear that

19  there is medical evidence of fibromyalgia.

20  Substantial evidence supports the ALJ's reliance on the non-treating physicians' opinions in

21  finding Wells' testimony about the intensity, persistence and limiting effects of her symptoms not

22  _____

23  [119] *Id.* at 33.

24  [120] *Id.* at 33-34.

25  [121] *Id.* at 34.

26  [122] Docket No. 14-3 at 35; *see* Docket No. 19-1 at 23-25.

27  [123] *See* Docket No. 19-1 at 23-25.

28  20

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  entirely credible.  First, while some of the medical opinions predated the amended onset date, Dr.

2  Wil Nelp's opinion was proffered after the amended onset date and included a review of "all of the

3  evidence present in the record as of the date of the hearing," September 9, 2013.[124]  Second, it is

4  immaterial that the SSA doctors did not use SSR 12-2p in determining the intensity, persistence

5  and limiting effects of Wells' impairments.  Wells challenges the ALJ's reliance on an absence of

6  clinical abnormalities, muscle atrophy, or decreased muscle bulk and tone and argues that if the

7  SSA doctors and the ALJ had used SSR 12-2p, they would have understood what signs and

8  symptoms to look for.[125]  What this argument ignores, however, is that SSR 12-2p sets out

9  guidelines for diagnosing fibromyalgia, and the ALJ found that Wells had fibromyalgia.[126]  The

10  ALJ then looked to the medical evidence to see if it supported Wells' testimony about what effect

11  the fibromyalgia had on her.[127]  SSR 12-2p does not prohibit this, and Wells does not show how the

12  ALJ erred in her analysis or how she should have applied SSR 12-2p differently.  Third, that there

13  is medical evidence of fibromyalgia under SSR 12-2p's diagnostic guidelines is not relevant to the

14  ALJ's adverse credibility finding, as discussed at length above.  Wells argues that "the record

15  contains 'objective evidence'" of fibromyalgia "symptoms, signs or co-occurring conditions," and

16  so SSR 12-2p's diagnostic guidelines for establishing a diagnosis of fibromyalgia are satisfied.[128]

17  The court agrees—as did the ALJ, presumably, since she found that Wells had an MDI of

18  fibromyalgia.[129]  Wells fails to explain, however, how the fact that she satisfies the diagnostic

19  criteria for fibromyalgia—which the ALJ presumably agreed with—shows that the ALJ erred in

20

21

22  [124] *See* Docket No. 14-3 at 39.

23  [125] *See* Docket No. 19-1 at 24.

24  [126] *See* Docket No. 14-3 at 27.

25  [127] *See id.* at 31-36.

26  [128] *See* Docket No. 19-1 at 24.

27  [129] *See* Docket No. 14-3 at 27.

28
Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    finding that Wells' testimony about the limiting effects of that fibromyalgia was not entirely

2    credible.

3         The second part of Wells' argument is a challenge to the weight the ALJ gave to the

4    treating physicians' RFC opinions.  The ALJ assigned "greatest weight" to consulting physicians

5    Nelp, Klein and Polizos and examining physician Acenas.[130]  She assigned "significant weight" to

6    Vu and Mitchell.[131]  She assigned "little weight" to treating physicians Bush and Bowie and

7    treating psychiatrist Braverman.[132]

8         As a threshold matter, the ALJ must consider all medical opinion evidence.[133]  The ALJ

9    should assign "controlling weight" to a treating physician's opinion where medically approved

10   diagnostic techniques support the opinion and it is consistent with other substantial evidence.[134]  A

11   treating physician's opinion is given more weight than an examining or non-examining physician's

12   opinion[135] because these physicians are in a better position to know plaintiffs as individuals, and

13   because the continuity of their treatment improves their ability to understand and assess an

14   individual's medical concerns.[136]  Thus, if a treating physician's opinion is not contradicted by

15   another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial

16   evidence in the record.[137]

17        If the treating physician's opinion is contradicted by another doctor, the ALJ may reject the

18   _____

     [130] See id. at 39.

19

20   [131] See id. at 40.

21   [132] See id.

22   [133] See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

23   [134] See 20 C.F.R. § 404.1527(d)(2); Orn, 495 F.3d at 623-33.

24   [135] See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); Lester v. Chater, 81 F.3d 821, 830
     (9th Cir. 1995).

25

26   [136] See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

27   [137] See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Valentine v. Comm'r of
     Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).

28
                                        22
     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   treating opinion only if she provides "specific and legitimate reasons" supported by substantial

2   evidence in the record.[138]  This can be done by setting out a detailed and thorough summary of the

3   facts and conflicting clinical evidence, stating the ALJ's interpretation thereof and making

4   findings.[139]  The ALJ must do more than offer her conclusions. She must set forth her own

5   interpretations and explain why they, rather than the doctor's, are correct.[140]   "When an ALJ does

6   not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one

7   medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical

8   opinion or assigns it little weight while doing nothing more than ignoring it, asserting without

9   explanation that another medical opinion is more persuasive, or criticizing it with boilerplate

10   language that fails to offer a substantive basis for his conclusion."[141]

11          Even when an ALJ does not give a treating physician's opinion "controlling weight"

12   because it is not "well-supported" or is inconsistent with other substantial evidence in the record,

13   the ALJ should consider these factors to determine what weight to give the opinion: the length of

14   the treatment relationship, frequency of examination, nature and extent of treatment relationship,

15   consistency of opinion, evidence supporting the opinion, and the doctor's specialization.[142]

16          Wells challenges the ALJ's assignment of weight to the various doctors' opinions as

17   follows: first, "[t]he ALJ's reasons for giving more weight to the opinions of the Social Security

18   Administration's doctors are not supported by substantial evidence,"[143] and second, the ALJ

19   _____

20   [138] *Lester*, 81 F.3d at 830.

21   [139] *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

22   [140] *See Embrey*, 849 F.2d at 421-22.

23   [141] *Garrison*, 759 F.3d at 1012-13 (internal citation omitted).

24   [142] *See Orn*, 495 F.3d at 632 ("the ALJ is instructed by § 404.1527(d)(2) to consider the factors
25   listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating
     physician") (Section 404.1527(d)(2)-(6) factors are now listed in Section 404.1527(c)(1)-(6)); 20
26   C.F.R. § 404.1527(c)(1)-(6).

27   [143] Docket No. 19-1 at 23.

28
     Case No.: 5:14-cv-05503-PSG
     ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
     SUMMARY JUDGMENT

1   unfairly discounted the treating physicians' opinions because of their "check in the box" and "fill-

2   in-the-blank" forms.[144]

3          As to Wells' first point, the ALJ's reasons for assigning greater weight to the SSA's doctors

4   and "little weight" to the treating physicians' opinions are supported by substantial evidence.

5   Wells offers no explanation of why this assignment was incorrect.  Even so, the court finds that the

6   ALJ reviewed and summarized the treatment notes and RFC opinions of all these doctors in

7   detail.[145]  The ALJ then offered her own interpretations of the facts and conflicting clinical

8   evidence, and provided "specific and legitimate" reasons supported by substantial evidence in the

9   record for giving "little weight" to the treating physicians' opinions.  The ALJ assigned "little

10  weight" to Bush and Bowie's opinions because

11         [they] are strongly contradicted by [Wells'] acknowledged daily activities at a level
           fundamentally inconsistent with complaints of disabling symptoms . . . [They] are
12         expressly based on a full crediting of [Wells'] subjective complaints, which . . . are
           not entirely credible. . . . [They] are less well supported by the objective medical
13         evidence and by the evidence present in the record as a whole than the well-
           supported medical opinions of Dr. Nelp, Dr. Acenas, Dr. Klein, and Dr. Polizos.[146]
14

15  The ALJ assigned "little weight" to Braverman's opinion because

16         [It] is conclusory with little or nothing in the way of objective explanation or
           rationale for the extreme limitations it imposes. . . . The undersigned further finds
17         the opinion of Dr. Braverman the [sic] strongly contradicted by the objective
           medical evidence, including his own treatment notes, which indicate only minimal
18         clinical abnormalities.  The undersigned further finds that the opinion of Dr.
           Braverman is strongly contradicted by [Wells'] own acknowledeged daily activities
19         . . . [and] expressly based on a full acceptance of [Wells'] subjective complaints,
           which . . . are not entirely credible. . . . [T]he opinion of Dr. Braverman is less
20         supported by the evidence present in the record as a whole than the well-supported
           medical opinions of examining psychiatrist Dr. Acenas and of state agency medical
21         consultants Dr. Polizos and Dr. Klein.[147]

22

23  _____

    [144] *Id.* at 24-25.

24
    [145] *See* Docket No. 14-3 at 32-35 (reviewing medical treatment records), 36-39 (reviewing RFC
25  opinions).

26  [146] *Id.* at 40.

27  [147] *Id.*

28                                                         24
    Case No.: 5:14-cv-05503-PSG
    ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
    SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  The reasons the ALJ provided for assigning "little weight" to the treating physicians are specific

2  and legitimate, and supported by substantial evidence in the record, i.e. the medical treatment notes

3  and Wells' testimony about her daily activities.

4       As for Wells' second argument, while the ALJ described Bush, Bowie and Braverman's

5  RFC opinions as "check-mark-the-box" and "fill-in-the-blank" forms,[148] there is no indication that

6  she relied on the format of the forms as reasons for assigning "little weight" to Bush, Bowie and

7  Braverman's RFC opinions.[149]   The ALJ did not err in assigning "little weight" to Bush, Bowie and

8  Braverman's RFC opinions.

9  **IV.**

10       The court DENIES Wells' motion for summary judgment, GRANTS the Commissioner's

11  motion for summary judgment and affirms the decision of the ALJ.

12  **SO ORDERED.**

13  March 18, 2016

14  PAUL S. GREWAL

15  United States Magistrate Judge

---

[148] *Id.* at 37, 38.

[149] *See id.* at 40.

25

Case No.: 5:14-cv-05503-PSG
ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT